**James MATHIS, Petitioner,**

v.

**Walter ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent.**

**Civ. A. No. 1:87–CV–2355–MHS.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 26, 1989.

Michael Raymond Hauptman, Hauptman & Rothstein, Atlanta, Ga., for James Mathis.

Dennis Robert Dunn, State of Georgia Law Dept., and William Bradley Hill, Jr., Office of State Atty. Gen., Atlanta, Ga., for Walter Zant.

ORDER

SHOOB, District Judge.

Presently before the Court is a petition for a writ of habeas corpus filed by James Mathis ("Mathis"). By an order dated July 26, 1988, the Court found that counsel's performance during the penalty phase of petitioner's trial failed to meet reasonable professional standards. The Court deferred ruling on the petition, however, because petitioner did not demonstrate that prejudice occurred as a result of trial counsel's conduct. The Court directed petitioner to submit affidavits concerning mitigating evidence that might have affected the outcome of the sentencing phase of the trial.[1] Based on a thorough review of the

---

1. Respondent argues that petitioner improperly submitted additional evidence in support of his ineffective assistance of counsel claim. The Court disagrees. Petitioner's ineffective assistance of counsel claim was addressed during state habeas corpus hearings. Petitioner filed affidavits concerning this issue pursuant to Court order, not to bypass state court proceedings. The Court also rejects respondent's claim

evidence submitted by both parties, the Court will grant the petition for a writ of habeas corpus with directions that petitioner receive a new sentencing hearing in state court.

On May 28, 1981, a Douglas County, Georgia jury recommended that petitioner receive the death penalty for the armed robbery, kidnapping and murder of J.L. and Ruby Washington. The murders occurred on November 27, 1980, while the victims were driving to meet their children for a Thanksgiving dinner. Mathis had spent the day at the home of his sister, who lived in the same apartment complex as the victims. Mathis had left his sister's apartment and was walking near the apartment complex when the Washingtons stopped and offered him a ride. Shortly thereafter, Mathis forcibly obtained a pistol carried by J.L. Washington and ordered the Washingtons to drive to an abandoned sawmill road. The jury found that Mathis brutally robbed and murdered both victims at that site.

The Supreme Court of Georgia affirmed petitioner's conviction and sentence on May 18, 1982, 291 S.E.2d 489, and the Supreme Court of the United States denied his petition for a writ of certiorari on June 27, 1983, 463 U.S. 1214, 103 S.Ct. 3552, 77 L.Ed.2d 1399, and his petition for rehearing on September 8, 1983, 463 U.S. 1249, 104 S.Ct. 38, 77 L.Ed.2d 1456. Petitioner sought state habeas corpus relief beginning in August 1983 and May 1986. On both occasions, the state courts denied the petition and the Supreme Court of the United States denied review. The present action for federal habeas corpus relief was filed October 28, 1987 and alleges that petitioner's right to effective assistance of counsel was violated during both the guilt and penalty phases of his trial. The Court ruled on July 26, 1988 that petitioner's rights were not violated during the guilt phase of the trial; however, as stated earlier, the Court held that counsel's performance during sentencing fell outside reasonable professional standards.

The Court's previous order concluded that trial counsel John L. Coney ("Coney") that it must conduct an evidentiary hearing con-

erred because he did not conduct an adequate investigation into mitigating evidence and because he presented an inadequate closing argument. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Although *Strickland* requires great deference to counsel's judgment, Coney made inquiries that amounted to an investigation in name only. Coney interviewed one family member, consulted a three page psychiatric report based on a single visit with petitioner, neglected to contact petitioner's employer and failed to obtain copies of any of petitioner's school or prison records. The affidavit submitted by Coney as part of this habeas proceeding indicates that he would have spoken to other family members had they contacted him. (Affidavit of John L. Coney, Respondent's Exhibit No. 37 at 4–6). But the duty to investigate requires more than mere receptiveness to mitigating evidence; counsel must make affirmative efforts to identify the existence of such evidence. Moreover, the affidavit reveals that Coney was unaware of details concerning petitioner's mental abilities, family history, school performance and prison records that could have been used as mitigating evidence. Where counsel does not investigate despite such a lack of familiarity with his client's history, he has not made "a reasonable decision that makes particular investigations unnecessary." *Id.*

The Court finds trial counsel's conduct particularly objectionable because Coney failed to seek detailed information about his client's past even though his cursory investigation revealed that Mathis had a troubled upbringing. Under similar circumstances the Eleventh Circuit ruled:

[Petitioner] made his counsel aware of his unhappy and abused past; yet counsel did not even interrogate [petitioner's] family members to ascertain the veracity of the account or their willingness to testify.... Briefly stated, counsel's to-

cerning this petition.

tal failure to investigate possible witnesses ... when he was aware of [petitioner's] past and knew that mitigation was his client's sole defense, was unprofessional performance.

*Elledge v. Dugger*, 823 F.2d 1439, 1445, *withdrawn in part on rehearing*, 833 F.2d 250 (11th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988).[2] Moreover, there is no indication in the present case that Coney limited the scope of his investigation out of deference to his client's wishes. *See Thompson v. Wainwright*, 787 F.2d 1447, 1451 (11th Cir.1986), *cert. denied*, 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 825 (1987).

In addition to betraying his duty to present what evidence he could on petitioner's behalf, Coney delivered a closing argument that the Court in its prior order generously termed "an apology for having served as Mathis's counsel." "Reminding a jury that the undertaking is not by choice, but in service to the public, effectively stacks the odds against the accused." *Goodwin v. Balkcom*, 684 F.2d 794, 806 (11th Cir.1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). Coney claims in his affidavit that he proceeded in this manner so that the jury would spare petitioner's life because they felt sorry for counsel. (Affidavit of John L. Coney, Respondent's Exhibit No. 37 at 13–14.) The Court rejects the argument, however, that a defendant benefits from a closing argument that relies on jury sympathy for the plight of the criminal defense lawyer. Even the most expansive definition of reasonable professional assistance could not include Coney's performance. Further reflection, along with consideration of Coney's affidavit, serves only to bolster the Court's determination that petitioner received lamentable representation during the sentencing phase of his trial.

Having reviewed its finding that Mathis did not receive the benefit of competent professional representation when he was sentenced to death, the Court must still determine whether prejudice occurred as a result of counsel's errors. As the Supreme Court stated in *Strickland:*

> When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer—including an appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.

*Id.* 466 U.S. at 695, 104 S.Ct. at 2069. The "reasonable probability" standard does not require petitioner to show that counsel's errors altered the outcome in the case; the Court focuses instead on whether those errors created a probability of a different result "sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. In other words, the Court must assess the likelihood that the jury would have reached a different result if petitioner had received competent representation. If that probability rises to a level that leaves the Court uncertain about whether petitioner would have been sentenced to death, a new sentencing hearing should take place.

Under the *Strickland* standard it is rare for a petitioner to prevail based solely on flaws in trial counsel's closing argument. More typically ineffective assistance of counsel results from the combination of a harmful closing argument and failure to present available mitigating evidence. *See, e.g., King v. Strickland*, 714 F.2d 1481 (11th Cir.1983), *vacated on other grounds*, 467 U.S. 1211, 104 S.Ct. 2651, 81 L.Ed.2d 358 (1984), *adhered to on remand*, 748 F.2d 1462 (11th Cir.1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2020, 85 L.Ed.2d 301

---

**2.** The same admonition applies to trial counsel's failure to interview relatives who could have provided good character evidence. In particular, testimony that Mathis's family loved him and wanted him to live could have persuaded the jury that Mathis was not a totally reprehensible individual. *See Blake v. Kemp*, 758 F.2d

523, 534–35 (11th Cir.), *cert. denied*, 474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985). Trial counsel's belief that these relatives would not make good witnesses because of the stress involved does not excuse his refusal to contact them.

(1985). The Court has little doubt that Coney's closing argument during sentencing hurt Mathis. Where counsel focuses on his role as attorney for the defendant in a closing argument, his effort can hardly be termed an attempt to humanize his client. Rather, he achieves a separation from his client that is inconsistent with the requirements of effective representation. *See King,* 714 F.2d at 1491. The Court recognizes that even the most spirited closing argument could not have produced a different outcome for Mathis in the absence of mitigating circumstances. But since mitigating evidence was available, Coney's closing argument—a failure both for what it said and what it did not say— erodes much of the Court's confidence in this death sentence.

Whatever lingering doubts the Court entertains concerning appropriate disposition of petitioner's claims are eliminated because the jury sentenced Mathis to death without considering substantial mitigating evidence. The Court considers this evidence in three categories: personal background, mental health history and prison records. First, Mathis endured what appellate counsel properly terms an "impoverished childhood." Mathis suffered repeated verbal and physical abuse from his father, who was a chronic alcoholic. Mathis missed school approximately one third of each academic year through fourth grade and underwent constant ridicule when he did attend classes because he was a slow learner. Mathis dropped out of school after fifth grade and worked at several jobs until he was fifteen years old. Since that time, he has spent all but thirty-one months in prison. As the Supreme Court has stated on numerous occasions:

> [E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.

*California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987)

(O'Connor, J., concurring). *See also Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). The Court concludes that presentation of evidence concerning petitioner's disadvantaged, indeed tormented, upbringing could have resulted in a sentence other than death.

Second, Mathis functions with extreme mental deficiencies. Over the years psychological tests have indicated that Mathis is at best of lower borderline intelligence and at worst mentally deficient. These reports, including tests from 1970 indicating that Mathis was "functioning as a mental defective," were part of Mathis's prison records and were readily available to trial counsel. The affidavit submitted by the psychologist appointed to examine Mathis in conjunction with this petition concludes that "Mathis' test scores and history support a diagnosis of mild retardation." (Affidavit of Dr. Howard Albrecht, Ph.D., Petitioner's Exhibit No. 15 at 6.) The evaluation of the psychologist employed by respondent indicates that Mathis "falls in the borderline classification of intelligence." (Letter from Marcelo de la Serna, Ph.D., Respondent's Exhibit No. 38 at 2.) Compounding these mental difficulties, Mathis has a history of alcohol and drug abuse. Hospital records from before petitioner's trial in this case indicate that Mathis suffered blackouts during periods of heavy drinking and drug use.

Mental illness is a condition that should militate in favor of a lesser penalty. *See Zant v. Stephens,* 462 U.S. 862, 885, 103 S.Ct. 2733, 2747, 77 L.Ed.2d 235 (1983), *cited in Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 3139, 97 L.Ed.2d 638 (1987) (Powell, J., dissenting). Like petitioner here, the defendant in *Middleton v. Dugger,* 849 F.2d 491 (11th Cir.1988), endured "a childhood of brutal treatment and neglect," failed to complete fifth grade, had a borderline I.Q. and suffered from mental illness. The *Middleton* court concluded that a reasonable probability existed that a sentence other than death might have re-

sulted if this evidence had been presented. The court stated:

> This kind of psychiatric evidence, it has been held, has the potential to totally change the evidentiary picture by altering the causal relationship that can exist between mental illness and homicidal behavior. "Thus, psychiatric mitigating evidence not only can act in mitigation, it also could significantly weaken the aggravating factors."

*Id.* at 495 (citations omitted). Although arguably less powerful, the influence of drugs or alcohol has also been found to be mitigating evidence. *Roberts v. Louisiana,* 431 U.S. 633, 637, 97 S.Ct. 1993, 1995, 52 L.Ed.2d 637 (1977). The Court cannot understand how trial counsel could fail to comprehend the significance of such mitigating evidence. Perhaps counsel thought that only "good" details from petitioner's past and his mental history could mitigate his moral culpability, but our jurisprudence holds otherwise. *See Burger,* 107 S.Ct. at 3139 (Powell, J., dissenting). The Court concludes that presentation of evidence concerning petitioner's mental deficiencies could have resulted in a sentence other than death.

Finally, prison records provide information about Mathis's background that suggests he would not pose a threat to society if incarcerated. As stated previously, prison records readily available to trial counsel reveal much about petitioner's impoverished past and mental difficulties. The same records indicate that Mathis behaved well in prison and include a letter from the prison superintendent that commended Mathis for his positive attitude. While in prison, Mathis completed a thirty-hour course called "The Principles of Success" and received an achievement certificate for job training as a sewing machine operator. The Supreme Court held in *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) that testimony that a defendant had been a well-behaved and well-adjusted prisoner constitutes relevant mitigating evidence. The Court stated:

> Consideration of a defendant's past conduct as indicative of his probable future behavior is an inevitable and not undesirable element of criminal sentencing.... The Court has therefore held that evidence that a defendant would in the future pose a danger to the community if he were not executed may be treated as establishing an "aggravating factor" for purposes of capital sentencing. Likewise, evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating.

*Id.* at 5, 106 S.Ct. at 1671 (citations and footnote omitted). Affidavits submitted by family members indicate that Mathis felt more comfortable while in prison than in the outside world (Affidavit of Willie Price, Petitioner's Exhibit No. 11 at 2–3) and that this difficulty became more pronounced after his release in 1980 because his mother and maternal grandparents had died while he was incarcerated. (Affidavit of Lizzie Pounds, Petitioner's Exhibit No. 9 at 3; Affidavit of Flora Mae White, Petitioner's Exhibit No. 10 at 2; Affidavit of Artril Price, Petitioner's Exhibit No. 12 at 2.) The Court does not consider this evidence to be mitigating to anywhere near the same degree as the circumstances discussed previously. At the same time, the sentencing jury might have concluded from this evidence that Mathis should be given a life sentence instead of the death penalty.

The Court believes that trial counsel's failure to present mitigating evidence readily available to him resulted in a sentence that could not reflect the individual characteristics of petitioner. *See Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Without adequate and accurate information concerning the defendant,

> a jury cannot make the life/death decision in a rational and individualized manner. Here the jury was given no information to aid them in the penalty phase. The death penalty that resulted in this case was thus robbed of the reliability essential to assure confidence in that decision.

*Tyler v. Kemp,* 755 F.2d 741, 745 (11th Cir.), *cert. denied,* 474 U.S. 1026, 106 S.Ct. 582, 88 L.Ed.2d 564 (1985). The Court

finds a reasonable probability that absent counsel's errors the jury would have recommended a sentence other than death. The Court therefore holds that trial counsel's failure to present mitigating evidence, combined with a closing argument that did not even constitute an adequate plea for mercy, denied petitioner's right to effective assistance of counsel. Under such circumstances, petitioner's death sentence cannot stand.

For the foregoing reasons, the Court GRANTS the petition for a writ of habeas corpus as to the capital sentence. The State shall have a right to conduct a new sentencing hearing within ninety days.

IT IS SO ORDERED.