James **MATHIS**, Petitioner–Appellee,

v.

Walter **ZANT**, Warden, Georgia Diagnostic and Classification Center, Respondent–Appellant.

No. 90–8950.

United States Court of Appeals, Eleventh Circuit.

Oct. 14, 1992.

Rehearing and Rehearing En Banc Denied Dec. 14, 1992.

---

Susan V. Boleyn, Atlanta, Ga., for respondent-appellant.

Michael R. Hauptman, Hauptman & Rothstein, Atlanta, Ga., for petitioner-appellee.

Before TJOFLAT, Chief Judge, FAY, Circuit Judge, and CLARK, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Petitioner James Mathis is a Georgia prison inmate. He stands convicted of two counts of murder, two counts of kidnapping, and one count of armed robbery. Petitioner faces death sentences on the murder convictions, life sentences on the kidnapping convictions, and a twenty-year sentence on the armed robbery conviction, with the latter three sentences to be served consecutively. The District Court for the Northern District of Georgia granted Mathis' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988) as to his death sentences and denied the petition as to his convictions. *Mathis v. Zant*, 744 F.Supp. 272 (N.D.Ga.1990). In granting habeas relief, the district court relied on two grounds: ineffective assistance of counsel at sentencing in violation of the Sixth and Fourteenth Amendments, *id.* at 273–74, and prosecutorial misconduct during the closing argument at sentencing in violation of the Due Process Clause of the Fourteenth Amendment, *id.* at 275–76. Respondent Walter Zant appeals from the district court's judgment granting petitioner habeas corpus relief.

We vacate the district court's judgment granting relief as to petitioner's death sentences on the basis of ineffective assistance of counsel at sentencing. We remand the case for further proceedings, but retain jurisdiction over all remaining claims.

I.

Our disposition of this case requires a brief exposition of its procedural history. On October 28, 1987, Mathis filed a habeas corpus petition in the federal district court. On December 9, 1987, the district court ordered respondent to file transcripts and records of the state proceedings within ten days under Rule 4, Rules Governing Section 2254 Cases, 28 U.S.C. fol. § 2254, and *sua sponte* allowed Mathis twenty days to amend his petition "to state any additional grounds for relief from conviction or sentence, including but not limited to petitioner's mental competency, which are known or could be known with the exercise of due diligence."[1] Citing Rule 9(b), Rules Gov-

---

1. Mathis, who was represented by counsel, had not sought leave to amend.

erning Section 2254 Cases, 28 U.S.C. fol. § 2254, the court further advised Mathis that "[f]ailure to so amend the petition will be considered a waiver of any additional grounds for relief." On December 17, 1987, respondent filed the requested transcripts and records. After Mathis had not amended his petition in response to the district court's order of December 9, respondent, on January 29, 1988, filed an answer to Mathis' original petition. In his answer, respondent raised the following defense:

> Petitioner has received full and fair postconviction determinations of all of the issues raised in the instant petition during the review of his convictions both on direct appeal and through the [p]etitioner's two state habeas corpus actions. Those courts have made reliable determinations that there were no factual bases to any of the [p]etitioner's claims or that the [p]etitioner had procedurally defaulted on the presentation of some of those claims. The [p]etitioner has shown insufficient cause to require this Court to relitigate the factual claims allegedly supporting the issues raised herein.
>
> . . . .
>
> It appears that the [p]etitioner has raised all of the claims presented herein in his first state habeas corpus action, and therefore, exhaustion is not an issue at the present time.

In the brief in support of his answer, respondent elaborated on this defense:

> [T]he [p]etitioner has apparently exhausted his available state remedies by the raising of the claims presented herein both in his first state habeas corpus action and in his direct appeal to the Supreme Court of Georgia. Respondent submits that the consideration of these claims in the state courts provided the [p]etitioner with a full and fair opportunity to litigate these claims and therefore the factual findings of the state courts, which are amply supported by the record in the instant case, are entitled to a presumption of correctness.
>
> Under 28 U.S.C. § 2254(d), the findings of fact made by a state court after a full

and fair hearing on the merits shall generally be presumed to be correct unless the proceedings in the state court fall within one of the statutory exceptions which rebut the presumptions of reliability. Such a presumption of correctness applies both to explicit and implicit findings of fact.

> Respondent submits that the [p]etitioner in the instant case has received full and fair hearings of his claims in the state courts. This Court should not grant an evidentiary hearing on the issues raised, but should presume that the factual findings made by the state courts are reliable. The burden is on the [p]etitioner himself in this habeas corpus proceeding to establish a need for an evidentiary hearing. "The threshold inquiry for the court in evaluating whether the burden has been met is to determine whether the allegation, if proved, would establish the right of habeas relief." As the [p]etitioner has received full and fair hearings in the state courts, [r]espondent submits that this Court should deny relief without any additional hearings.

(Citations omitted.)

After petitioner had submitted a brief and a supplemental brief, the district court, by order of July 26, 1988, rejected petitioner's claim of ineffective assistance of counsel at the guilt phase, but *sua sponte* "defer[red] ruling on the petition and require[d] counsel to submit further affidavits and documentary information regarding the sentencing phase of petitioner's trial." In its order, the court observed that "[i]n the absence of a demonstration of existence of available mitigating evidence or prejudice resulting from [trial] counsel's closing argument [at sentencing], the Court could simply deny Mathis's ineffective assistance claim." Citing the gravity of the proceedings, but no statutory authority, the court nevertheless granted petitioner "another opportunity to present all available information to buttress his claim" and directed petitioner "to submit any available affidavits or documentary evidence regarding mitigating circumstance within 30 days of [its] order."

After petitioner had submitted affidavits and documentary evidence pursuant to the court's order, respondent filed a response to the court's order and to petitioner's submission of additional evidence raising, *inter alia*, the following objections:

Petitioner has not demonstrated that the hearing held in the state habeas corpus proceeding was inadequate under the guidelines of 28 U.S.C. § 2254 and the criteria of *Townsend v. Sain*, 372 U.S. 293 [83 S.Ct. 745, 9 L.Ed.2d 770] (1963). Absent such a showing by the [p]etitioner, the state court's findings of fact must be given a presumption of correctness and those findings of fact must be evaluated also in the context of any possible deliberate bypass of the state proceeding which may amount to a waiver of the [p]etitioner's right to present additional evidence before this Court regarding his claims of ineffective assistance of counsel [at] the sentencing phase of his trial.

As such, absent an explanation as to why the evidence presented to this Court was not presented to the state habeas corpus court, and a showing as to why the state court proceedings did not meet the criteria of 28 U.S.C. § 2254 so as to authorize this Court to conduct additional evidentiary proceedings, [r]espondent maintains that the [p]etitioner's proffer of alleged mitigating evidence is improperly presented to this Court for its review and should not be considered by this Court in any determination of the allegations presented in this habeas corpus petition.

. . . .

Alternatively, [r]espondent questions whether the [p]etitioner's offer of new substantive evidence foreclosed from state court credibility determinations and review renders this petition unexhausted

under the guidelines of *Hart v. Estelle*, 634 F.2d 987, 989 (5th Cir. Unit A 1981). Here, as in *Hart*, the [p]etitioner has presented a "weak" case of only two affidavits of possibly mitigating evidence to the state habeas corpus court, and indeed initially to this Court. However, after this Court's order of July 26, 1988, [p]etitioner has proffered 18 new exhibits which should have or could have been presented to the state court. As such, the state court has been denied the opportunity to review this evidence. In balancing the rights of the parties involved, [r]espondent suggests that the state courts should be given this opportunity.

(Citations omitted.)

On January 26, 1989, the district court relied heavily on the supplemental evidence submitted by petitioner in finding that petitioner had received ineffective assistance of counsel at sentencing and granted petitioner habeas corpus relief as to his death sentences.[2] *Mathis v. Zant*, 704 F.Supp. 1062 (N.D.Ga.1989). On March 15, 1989, the court rejected petitioner's remaining claims relating to the guilt phase. *Mathis v. Zant*, 708 F.Supp. 339 (N.D.Ga.1989). After we had dismissed respondent's appeal from the district court's judgment granting petitioner partial habeas corpus relief as an appeal from a nonfinal judgment under 28 U.S.C. § 1291 (1988), *Mathis v. Zant*, 903 F.2d 1368 (11th Cir.1990), the district court, on September 12, 1990, once again granted petitioner relief as to his death sentences and denied relief as to his convictions. In its order on remand, the court granted petitioner relief as to his death sentences on two grounds. First, it referred to the rationale enunciated in its order of January 26, 1989, which, as mentioned above, drew substantially on peti-

---

**2.** In its order of January 26, 1989, the district court responded to respondent's objections to the consideration of supplemental evidence in the following footnote:

Respondent argues that petitioner improperly submitted additional evidence in support of his ineffective assistance of counsel claim. The Court disagrees. Petitioner's ineffective assistance of counsel claim was addressed during state habeas corpus hearings. Peti-

tioner filed affidavits concerning this issue pursuant to Court order, not to bypass state court proceedings.

*Mathis v. Zant*, 704 F.Supp. 1062, 1062 n. 1 (N.D.Ga.1989).

Respondent's brief in support of his motion to alter and amend judgment of February 13, 1989, reiterated his objections to the consideration of supplemental evidence.

tioner's supplemental evidence. *Mathis*, 744 F.Supp. at 273–74. Second, it granted relief on the basis of prosecutorial misconduct during closing argument at sentencing. *Id.* at 275–76. Respondent appeals from the court's judgment granting habeas corpus relief as to petitioner's death sentences.

## II.

As the foregoing discussion reveals, the district court, on its own initiative, permitted petitioner to introduce additional evidence to bolster his claim of ineffective assistance of counsel at sentencing by developing and submitting evidence never presented to the state court that first addressed this claim. Over respondent's repeated objections, the court also neglected to identify the source of its authority for taking this action.

We VACATE the district court's judgment granting petitioner habeas corpus relief as to his death sentences on the basis of ineffective assistance of counsel at sentencing and REMAND the case to the district court for further proceedings. Following respondent's recommendation on appeal, we direct the district court on remand (1) to articulate its ground or grounds for circumventing the presumption of correctness accorded a state court's factual findings under 28 U.S.C. § 2254(d) by *sua sponte* permitting petitioner to submit additional evidence on his claim of ineffective assistance of counsel at sentencing, (2) to determine whether petitioner can demonstrate cause and prejudice for failing to present to the state courts the supplemental evidence submitted to the district court, *see Keeney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), and (3) to decide whether petitioner's development of supplemental evidence amounted to the presentation of a separate claim of ineffective assistance of counsel not yet exhausted in the state courts. *See* 28 U.S.C. § 2254(b); *Coleman v. Thompson,* —— U.S. ——, —— - ——, 111 S.Ct. 2546, 2554–55, 115 L.Ed.2d 640 (1991).

IT IS SO ORDERED.

CLARK, Senior Circuit Judge, dissenting.

I disagree with the majority's decision to remand this case. In my view, a remand is unnecessary because: (1) the district court clearly had the authority to consider additional evidence that was not presented to the state court; and (2) the record clearly indicates that the district court did not improperly circumvent the presumption of correctness accorded state court factual findings under 28 U.S.C. § 2254(d). The panel should reach the merits of Mathis' claim that his trial counsel rendered ineffective assistance during the sentencing phase of the trial. Accordingly, I dissent.

### I. *Procedural Background*

On May 28, 1981, a jury found James Mathis guilty of murder, kidnapping, and armed robbery. At the sentencing proceeding, which commenced immediately after the return of the guilty verdict, Mathis' trial counsel, John Coney, did not cross-examine the state's witness and did not offer any evidence on his client's behalf. Mr. Coney concluded his short closing argument by stating:

What it comes down to is that there is nothing really you or I can do for [the victims], they are gone. I am part of this community just like you are and a resident of this county just like you are. I have children just like most of you. Again, if I did not believe in our system of law I wouldn't be here.

So what it all comes down to is the decision that you, ladies and gentlemen, will have. The State, [the prosecutor] has very graphically stated to you that, and you have so found that James Mathis took into his hands the life of [the victims], and now you, ladies and gentlemen, have the life of another human being, another human being in your hands. And what the State is asking you to do is to sentence James Mathis to death which is exactly what you have convicted him of. You will be the one, not the judge, not the State, not [the prosecutor], not [the sheriff], but you will be the ones that make that decision

of life or death. As I say, it is a decision which, whatever it may be, just like the guilt or innocence part of it, the decision, the responsibility in which I would share with you, I will have my doubts, my reservations as to whether or not anything I did contributed to that decision. Thank you.[1]

Mr. Coney did not ask the jury to return a sentence other than death or otherwise ask the jury to have mercy upon his client. The jury returned a sentence of death.

Following the affirmance of his convictions and sentences on direct appeal, Mathis, represented by new counsel, filed a petition for writ of habeas corpus in the state court. In this petition, he alleged, among other things, that Mr. Coney was ineffective during the sentencing proceeding because he failed to adequately investigate and present mitigating evidence and because his closing argument was deficient. Specifically, Mathis argued:

> Trial counsel obtained a psychological evaluation of Petitioner prior to trial, said evaluation is part of the permanent record in this case. A reading of the evaluation would show that Petitioner suffers from a diminished mental capacity and suffers from irresistible impulses. While it is unlikely, that the jury would have brought back a verdict of insanity, it is not inconceivable. Notwithstanding this fact, trial counsel never introduced the examining doctor's testimony either during the guilt/innocence phase or the penalty phase of Petitioner's trial. Certainly, it should have at least been introduced as mitigating circumstances. Moreover, trial counsel chose not to speak with Petitioner's co-workers, employer or relatives in order to solicit their testimony at the penalty stage of the trial. Trial counsel maintained that this was because he did not think they would testify. . . .
>
> Trial counsel's opening and closing argument were ineffective for any purpose.

Trial counsel's closing argument [in the sentencing phase] is a lengthy monologue on how difficult it is to be a criminal defense attorney. At no time during counsel's closing did he even remotely suggest that the jury should show mercy or not execute Petitioner.[2]

At the state court evidentiary hearing, Mr. Coney testified that Mathis' aunt, Lizzie Pounds, retained him to represent Mathis. Lizzie Pounds had at one time worked for Mr. Coney and his wife.[3] Notwithstanding that Mr. Coney was aware that "Lizzie thought an awful lot of James,"[4] Mr. Coney decided that she should not testify on Mathis' behalf. Explaining this decision, Mr. Coney testified:

> [Mathis] had a great deal of confidence in his Aunt Lizzie. He lived with she and her husband and it was somewhat my decision to in effect leave Lizzie out of it. I told James I was not going to get her actively involved in it because win or lose, she had been in that community for a long time and would still be living there and her health wasn't all that good anyway. She is a very emotional type person and Lizzie had blood pressure problems and things like that. And so, I didn't—well, I wouldn't let Lizzie come in the courtroom. Because I didn't think it was best for her. And I told James that I was going to leave her out of it.

> .    .    .    .    .

> But I would not put Lizzie through that because I didn't feel like a lot of people, you know, knew Lizzie's relationship with James except in the community where they lived and Lizzie, at that time, was on the maintenance staff at the courthouse and I didn't want to—well, again, I just didn't feel like Lizzie was up to it.[5]

Thus, by Mr. Coney's own admission, he declined to have Lizzie testify for Mathis, not because it was not in Mathis' best interest, but because it was not in *Lizzie*'s

---

1. R1–5 Respondent's Exh. 2–B at 723–24.

2. R1–5 Respondent's Exh. 3 Tab 14 at 7–8.

3. R1–5 Respondent's Exh. 3 Tab 13 at 11.

4. *Id.* at 34.

5. *Id.* at 20–21, 34.

best interest. Mr. Coney further admitted that he did not seek out any other family members or friends to testify on Mathis' behalf. Indeed, he unequivocally admitted that, other than Lizzie Pounds, he did not speak with *anyone* regarding testifying at the sentencing phase of Mathis' hearing:

> [Mathis' habeas counsel]: Did you speak to anyone, any uncles, cousins, aunts, uncles, anyone, regarding them testifying in the penalty stage for James?
>
> [Mr. Coney]: Not other than his Aunt Lizzie.[6]

Mathis' habeas counsel presented to the state court the affidavits of Lizzie Pounds and another family member; they both attested that they were not asked to testify during the sentencing phase of Mathis' trial and that, had they been asked, they would have testified, among other things, that Mathis had been abused by his father as a child and that Mathis was good-natured and tried to help his family and friends when he could.[7] Habeas counsel asked Mr. Coney if he was aware that Mathis had been abused as a child. In response, Mr. Coney admitted that, "Lizzie told me that they had been hard on him."[8] Nevertheless, Mr. Coney did not pursue the child abuse as possible mitigating evidence. Indeed, Mr. Coney did not testify that he did *anything* is preparation for the sentencing phase of Mathis' trial. Although Mr. Coney initially testified that he relied on a psychiatric evaluation of Mathis to argue to the jury that "the electric chair was not the answer,"[9] he retracted this testimony after reviewing the trial transcript.[10] The trial transcript indicates that neither the evaluation nor the testimony of the doctor who prepared the evaluation was introduced at either the guilt or the sentencing phase of Mathis' trial.

After the evidentiary hearing, the state court issued an order denying Mathis' peti-

tion for habeas corpus relief. As to Mathis' claim that his counsel was ineffective during the sentencing phase, the state court held that, "Counsel appears to have proceeded in a reasonable fashion."[11] Thus, the state court concluded that Mr. Coney's performance was not deficient and did not reach the prejudice prong of the *Strickland*[12] test.

Mathis then filed this petition for writ of habeas corpus with the district court, again alleging that Mr. Coney rendered ineffective assistance of counsel during the sentencing phase of Mathis' trial. As the majority correctly points out, the district court, in an order signed on July 26, 1989, concluded that Mr. Coney was not ineffective during the guilt/innocence phase of Mathis' trial. The majority fails to point out, however, that the district court also concluded in this same order, based solely on the evidence then in the record, that Mr. Coney rendered deficient performance during the sentencing phase. Specifically, the court held:

> According to the record of the State habeas proceeding, Coney determined early on in his representation of Mathis that the State's evidence of Mathis's guilt was very strong and that he should therefore concentrate on preparing for the penalty phase of the trial. Nevertheless, he interviewed only one family member about Mathis's character. He obtained a brief psychiatric report, but did not discuss the report with Mathis. He did not contact Mathis's employer, or obtain a copy of his school, social service, or prison records.
>
> Further, counsel's performance during the sentencing phase of a capital trial can be rendered ineffective by presenting a closing argument that is sufficiently unartful to undermine the Court's confidence in the outcome of the sentencing phase. [Citations omitted.] During the

---

6. *Id.* at 63–64.

7. R1–5 Respondent's Exh. 3 Tab 13 Attachments.

8. R1–5 Respondent's Exh. 3 Tab 13 at 68.

9. *Id.* at 33.

10. *Id.* at 69.

11. R1–5 Respondent's Exh. 3 Tab 16 at 5.

12. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

sentencing hearing, which took place between 9:30 and 11 o'clock at night, Coney did not present any mitigating evidence. He proceeded to make a closing argument to the jury that was not simply weak; it constituted an apology for having served as Mathis's counsel. In his argument, Coney effectively distanced himself from his client and communicated to the jury that his presence was an obligatory part of the American system of justice.

.  .  .  .  .

Therefore, the Court concludes that counsel's performance during the penalty phase of the trial fell outside the range of reasonable professional standards. Petitioner must still, however, demonstrate prejudice. [Citation omitted.] In his brief, Mathis's present counsel enumerates several possible sources of mitigating evidence that were not explored by Coney. He neglects, however, to point out to the Court what information could have been obtained by pursuing these sources and how presentation of that information would have affected the outcome of the penalty phase of the trial.

.  .  .  .  .

Therefore, the Court DEFERS RULING on the present petition for habeas corpus and DIRECTS petitioner to submit any available affidavits or documentary evidence regarding mitigating circumstances within 30 days of the date of this order.[13]

The majority fails to make clear that the district court reached this conclusion that Mr. Coney rendered deficient performance during the sentencing phase after reviewing the *same evidence* before the state habeas court when that court concluded Mr. Coney's performance was not deficient. Only after the district court concluded, based on the existing record, that counsel's performance was deficient did the court permit Mathis to produce additional evidence to support his allegations that he was prejudiced by counsel's deficient performance.

To support the allegations of prejudice, Mathis' habeas counsel presented to the district court some additional evidence that had not been presented to the state court, including the affidavits of additional family members, the affidavit of a psychologist who performed an examination of Mathis, and Mathis' school, prison, and employment records. After reviewing all of the evidence, the district court concluded that Mr. Coney's "failure to present mitigating evidence, combined with a closing argument that did not even constitute an adequate plea for mercy, denied [Mathis'] right to effective assistance of counsel."[14]

## II.  *Discussion*

The majority goes astray because it merges distinct issues. First, as discussed in subpart A below, the majority fails to distinguish (1) whether a district court is *authorized* to hear evidence in addition to that heard by the state court from (2) whether a district court is *required* to hear such evidence. Second, as discussed in subpart B below, the majority blurs (1) a district court's discretionary power to hear additional evidence with (2) the limitations on a district court's power to set aside state court findings of fact.

## A.  *District Court's Authority To Consider Additional Evidence*

The majority errs in remanding the case for the district court "to articulate its ground or grounds for ... *sua sponte* permitting petitioner to submit additional evidence on his claim of ineffective assistance of counsel at sentencing [and] to determine whether petitioner can demonstrate cause and prejudice for failing to present to the state courts the supplemental evidence submitted to the district court." The majority looks to case law that specifies when a district court is *required* to consider additional evidence and erroneously applies this case law to determine whether the district court *may* consider such evidence. It is well established that district courts have

---

**13.**  R1–12 at 8–11 (footnotes omitted).

**14.**  R2–25 at 12.

broad authority to consider any evidence relevant to a petitioner's claim. Here, the district court acted well within this authority.

In *Townsend v. Sain*,[15] the Supreme Court "granted certiorari to determine whether the courts below had correctly determined and applied the standards governing hearings in federal habeas corpus." The Supreme Court proceeded to answer two distinct questions. First, the Court determined whether a federal court in a habeas proceeding is *authorized* to hear evidence in addition to that heard by the state court. The Court unequivocally held that a federal court is so empowered:

> The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.[16]

The Court then moved to the second question: under what circumstances is a federal court *required* to hear such additional evidence:

> We turn now to the considerations which in certain cases may make exercise of that power [to receive evidence and try the facts anew] mandatory. The appropriate standard ... is this: Where the facts are in dispute, the federal court in habeas corpus *must* hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in the state court....[17]

The Supreme Court was careful to make clear that the two questions are distinct. After setting out the test for determining when an evidentiary hearing is mandated, the Court said:

> The purpose of the test is to indicate the situations in which the holding of an evidentiary hearing is mandatory. In all other cases where the material facts are in dispute, the holding of such a hearing is in the discretion of the district judge. If he concludes that the habeas applicant was afforded a full and fair hearing by the state court resulting in reliable findings, he may, and ordinarily should, accept the facts as found in the hearing. But he need not. In every case he has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim. There is every reason to be confident that federal district judges, mindful of their delicate role in the maintenance of proper federal-state relations, will not abuse that discretion. We have no fear that the hearing power will be used to subvert the integrity of state criminal justice or to waste the time of the federal courts in the trial of frivolous claims.[18]

In this case, we are faced only with the first *Townsend* question, that is, we are faced only with whether the district court was *authorized* to hear the additional evidence supporting Mathis' allegations of prejudice. The second *Townsend* question, whether the district court was *required* to hear this evidence, is not implicated. Clearly, the district court in this case acted within its "power, constrained only by [its] sound discretion, to receive evidence bearing upon the applicant's constitutional claim."[19] There is no need to remand this case for the district court "to articulate its ground or grounds" for exercising this power.

The majority reaches a different conclusion because it confuses the first and second questions addressed in *Townsend*. To support remand for the district court to determine whether Mathis can show cause and prejudice for his failure to present the additional evidence to the state court, the majority relies on *Keeney v. Tamayo-*

---

15. *Townsend v. Sain*, 372 U.S. 293, 297, 83 S.Ct. 745, 749, 9 L.Ed.2d 770 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

16. *Id.* 372 U.S. at 312, 83 S.Ct. at 757.

17. *Id.* (emphasis added).

18. *Id.* at 318, 83 S.Ct. at 760.

19. *Id.*

*Reyes.*[20] In *Keeney*, the Ninth Circuit had held that an evidentiary hearing was *mandated* because the petitioner's failure to develop certain facts in his state court proceedings did not amount to a deliberate bypass of state procedures.[21] The Supreme Court reversed, holding that the cause and prejudice test, rather than the deliberate bypass test, is applicable to determine whether a habeas petitioner who has failed to develop facts at a state court proceeding is *entitled* to a hearing in federal court.[22] It is true that *Keeney* modifies the threshold of when a hearing is mandated, which is the second *Townsend* question; however, *Keeney does not touch upon* the first question of when a district court is authorized to hold a hearing. As Justice O'Connor said in her dissent, "the district courts ... still possess the discretion, which has not been removed by today's opinion, to hold hearings even where they are not mandatory."[23]

Thus, *Keeney* and the cause and prejudice test articulated therein are totally inapplicable to cases such as the one we now review, in which the question is *not* whether an evidentiary hearing is mandated, but rather whether the district court is *authorized* to hear additional evidence. The Sixth Circuit, which is the only circuit yet to address this issue, agrees. In *Sims v. Livesay*,[24] a case very similar to this one, the district court held an evidentiary hearing, heard evidence regarding powder burns on a quilt that had not been presented to the state court, and concluded that the petitioner's trial counsel had rendered ineffective assistance because the evidence of the powder burns may have changed the outcome of the trial. The Sixth Circuit affirmed. In response to the state's argument that the district court was not authorized to hear the evidence that had not been presented to the state court, the Sixth Circuit held:

> Beginning with the state's first argument, we note that the District Court had the authority to order an evidentiary hearing concerning the quilt. As the Supreme Court made clear in *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963), overruled on separate grounds by *Keeney v. Tamayo–Reyes*, — U.S. —, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), "[i]n every case [the district judge] has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim." The state's argument—that in holding an evidentiary hearing the District Court thereby ignored § 2254(d)'s presumption of correctness—confuses the District Court's discretionary power to hold a hearing with the limitations on the District Court's power to set aside state court findings of fact.[25]

The majority in this case errs in applying *Keeney* to this case and in remanding the case for further findings in light of *Keeney*.[26] Under *Townsend*'s holding that a

---

20. *Keeney v. Tamayo–Reyes,* — U.S. —, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

21. *Tamayo–Reyes v. Keeney,* 926 F.2d 1492 (9th Cir.1991), *rev'd,* — U.S. —, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

22. *Keeney,* — U.S. at —, 112 S.Ct. at 1721.

23. *Keeney,* — U.S. at —, 112 S.Ct. at 1727 (O'Connor, J., dissenting) (citing *Townsend* ). It is noteworthy that while Justice White, who wrote the majority opinion in *Keeney*, responded to other points made by Justice O'Connor in her dissent, *see* — U.S. at — n. 2 — n. 3, — n. 5, 112 S.Ct. at 1717 n. 2, 1719 n. 3, 1720 n. 5, he did not respond to this point.

24. *Sims v. Livesay,* 970 F.2d 1575 (6th Cir.1992).

25. 970 F.2d at 1578–79. The majority in this case, like the state in *Sims*, confuses a district court's discretionary power to hold a hearing with the limitations on the district court's power to set aside state court findings of fact. This is discussed in subpart B below.

26. Because I would hold that *Keeney* is inapplicable to this case, I note only briefly two deficiencies in the majority's application of *Keeney*. First, the majority errs in applying *Keeney* retroactively without first undertaking a retroactivity analysis. Second, the majority errs in failing to make clear that *Keeney* retains the "fundamental miscarriage of justice" exception to the cause and prejudice requirement. *Keeney,* — U.S. at —, 112 S.Ct. at 1721; *see also Tamayo–Reyes v. Keeney,* 969 F.2d 839 (9th Cir.1992) (after remand from Supreme Court, Ninth Circuit directed district court to undertake cause and

district court in a habeas proceeding has broad "power to receive evidence and try the facts anew," which holding is not affected by *Keeney,* I conclude that the district court had the authority to consider the additional evidence offered by Mathis to support his allegations of prejudice.

## B. *Application of the Presumption of Correctness Under § 2254(d)*

Having concluded that the district court was authorized to hear additional evidence, I address the separate and distinct issue: whether the district court improperly circumvented the presumption of correctness accorded state court factual findings pursuant to 28 U.S.C. § 2254(d). I stress what the majority ignores: that this issue is *distinct.* Federal courts must *first* decide whether to hear additional evidence and *then,* having heard the evidence, apply § 2254(d). As this court said in *Thomas v. Zant:*

> *Townsend* (including its inexcusable neglect and deliberate bypass corollaries) governs the threshold issue of whether or not to hold a federal evidentiary hearing at all, while section (d) allocates the burdens of proof once a *Townsend* hearing is deemed necessary.[27]

The Supreme Court in *Keeney* reiterated the distinction between whether to hear additional evidence and the application of § 2254(d):

> *Townsend* described categories of cases in which evidentiary hearings would be required. Section 2254(d), however, does not purport to govern the question of when hearings are required; rather, it lists exceptions to the normal presumption of correctness of state-court findings

and deals with the burden of proof where hearings are held. The two issues are distinct, and the statute indicates no assumption that the presence or absence of any of the statutory exceptions will determine whether a hearing is held.[28]

The majority muddles the distinction between these two issues. In the first of its three instructions to the district court, the majority directs the court to

> articulate its ground or grounds for circumventing the presumption or correctness accorded a state court's factual findings under 28 U.S.C. § 2254(d) by *sua sponte* permitting petitioner to submit additional evidence on his claim of ineffective assistance of counsel at sentencing.

The last half of this instruction goes to the question I have already answered above: whether the district court had authority to hear additional evidence. The first half goes to the question I now address: whether the district court properly applied § 2254(d). The majority, as the Sixth Circuit said in *Sims,* "confuses the District Court's discretionary power to hold a hearing with the limitations on the District Court's power to set aside state court findings of fact." A proper separation of these two issues, and an accurate analysis of the § 2254(d) issue, reveals that the district court did not improperly circumvent the state court's factual findings.

Under § 2254(d), a state court's factual finding is entitled to a presumption of correctness unless one of seven factors listed in § 2254(d)(1)–(7) is present or unless the factual finding "is not fairly supported by the record," § 2254(d)(8).[29] Even if the

---

prejudice and fundamental miscarriage of justice analysis).

**27.** *Thomas v. Zant,* 697 F.2d 977, 984 (11th Cir.1983); *see also In re Wainwright,* 678 F.2d 951, 953 (11th Cir.1982) ("[S]ection 2254(d) [cannot] be read to require the federal habeas court to determine section 2254(d)'s applicability *prior* to holding an evidentiary hearing on the habeas claims.").

**28.** *Keeney,* —— U.S. at —— n. 5, 112 S.Ct. at 1720 n. 5.

**29.** I acknowledge that the district court in this case failed to "include in its opinion granting

the writ the reasoning which led it to conclude that any of the first seven factors were present, or the reasoning which led it to conclude that the state finding was 'not fairly supported by the record.'" *Sumner v. Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981). This court has, however, declined to remand notwithstanding such a failure when it is clear from the record that the district court did not improperly circumvent state court factual findings. *See Douglas v. Wainwright,* 714 F.2d 1532, 1545 (11th Cir.1983), *vacated on other grounds,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 874 (1984). This is such a case.

presumption applies, § 2254(d) provides that a habeas petitioner may rebut the presumption by establishing "by convincing evidence that the factual determination by the State court was erroneous." Section 2254(d) applies only to a state court's findings as to historical facts; it does not apply to legal conclusions or to mixed questions of law and fact.[30]

In this case, the state habeas court and the district court, after reviewing identical evidence, reached contrary conclusions regarding Mr. Coney's performance: the state court determined that his performance was not constitutionally deficient while the district court determined that it was. As the Supreme Court in *Strickland* made clear, "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." [31] Thus, the state court's ultimate conclusion was in no way binding upon the district court. The state court's order contains a short paragraph setting out what may be characterized as factual findings to support its ultimate conclusion.[32] These findings do not in any way undermine the district court's conclusion. First, not all of the state court's findings are at odds with the district court's findings.[33] Second, to the extent the state court's findings are at odds with those of the district court, the state court's findings are not "fairly supported by the record." For example, the state court concluded that, "[Mr. Coney] talked with several of Petitioner's family members in an effort to have them testify on behalf of Petitioner at the sentencing phase," [34] while the district court concluded that, "[Mr. Coney] interviewed only one family member about Mathis's character." [35] The state court's finding is not supported by the record because Mr. Coney unequivocally testified that he did not talk with *anyone* other than Mathis' Aunt Lizzie.[36] The state court also found that, "[Mr. Coney] testified that he decided against calling Petitioner's aunt because of the bizarre behavior of Petitioner to which she might be forced to testify on cross-examination." [37] Although Mr. Coney, after prompting by the state's attorney, did testify that Mathis' Aunt Lizzie could reveal unfavorable information on cross-examination,[38] this was only after he *twice* testified that he did not put Aunt Lizzie on the stand because it was not "best for her." [39] Thus, these state court findings, which are not "fairly supported by the record," are not entitled to the presumption of correctness.

While I acknowledge that the district court should have specifically discussed its application of § 2254(d), it is clear from the record that the district court did not circumvent any state court findings entitled to the presumption of correctness in reaching its conclusion that Mr. Coney's performance was deficient. Because the state court did not reach the question of prejudice, and therefore made no factual findings as to this issue, § 2254(d) is not applicable to the district court's prejudice analysis.[40]

---

30. *See Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982).

31. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070.

32. R1–5 Respondent's Exh. 3 Tab 16 at 3–4.

33. For example, the state court stated that, "Counsel testified that he felt the State had a strong case and that his main concern was to keep his client out of the electric chair." R1–5 Respondent's Exh. 3 Tab 16 at 3. The district court reached the same conclusion. R1–12 at 8.

34. R1–5 Respondent's Exh. 3 Tab 16 at 3.

35. R1–12 at 8.

36. R1–5 Respondent's Exh. 3 Tab 13 at 63–64.

37. R1–5 Respondent's Exh. 3 Tab 16 at 4.

38. R1–5 Respondent's Exh. 3 Tab 13 at 34–35.

39. *Id.* at 20–21, 34.

40. In one of its three instructions to the district court, the majority orders the court "to decide whether petitioner's development of supplemental evidence amounted to the presentation of a separate claim of ineffective assistance of counsel not yet exhausted in the state court." Mathis' claim that his trial counsel was ineffective during the sentencing phase of trial was clearly presented to and decided by the state habeas court; the state acknowledged as much in its answer to Mathis' federal habeas petition. Moreover, Mathis' presentation of new evidence to support the prejudice prong of the ineffectiveness analysis does not amount to a "different legal theory" or a "new factual claim," as con-

### III. *Conclusion*

In this dissent, I consider only the single issue of whether our court is correct in remanding the case to the district court as the majority does. I conclude that the district court was clearly authorized to hear additional evidence on the prejudice prong of the ineffective assistance of counsel analysis, and the court did not circumvent any state court factual findings entitled to a presumption of correctness under § 2254(d). Accordingly, a remand is unnecessary. It is my view that our panel should decide the heart of the case, that is, was the district court correct in concluding attorney Coney was deficient in his performance and as a result of the deficiency Mathis was prejudiced. Since the majority does not discuss that issue, I do not.

templated in *Hart v. Estelle,* 634 F.2d 987, 989 (5th Cir. Unit A Jan. 1981). Indeed, the state habeas court and the district court reached contrary conclusions as to the deficiency prong of the ineffectiveness analysis after reviewing the *same record and evidence.* Had the state court reached the proper legal conclusion that counsel was deficient, it may have, as the district court did, indicated a need for further evidence as to the prejudice prong.