**Wilburn DOBBS, Petitioner–Appellant,**

v.

**Walter D. ZANT, Warden, Georgia Diagnostic and Classification Center, Respondent–Appellee.**

**No. 90–8352.**

United States Court of Appeals, Eleventh Circuit.

Oct. 25, 1991.

Robert Altman, Michael Kennedy McIntyre, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before FAY and HATCHETT, Circuit Judges, and CLARK, Senior Circuit Judge.

PER CURIAM:

In this capital case, we affirm the district court's denial of habeas corpus relief.

## FACTS AND PROCEDURAL HISTORY

On December 14, 1973, Wilburn Dobbs, the appellant, and two other men robbed Roy Sizemore's grocery store. During the armed robbery, Dobbs shot and killed Sizemore.[1] On May 22, 1974, a jury in the Superior Court of Walker County, Georgia, convicted Dobbs on two counts of aggravated assault, two counts of armed robbery, and one count of murder. That court sentenced Dobbs to death for the murder conviction. Dobbs appealed the convictions and the death sentence to the Georgia Supreme Court, which affirmed. *Dobbs v. State*, 236 Ga. 427, 224 S.E.2d 3 (1976), *cert. denied*, 430 U.S. 975, 97 S.Ct. 1667, 52 L.Ed.2d 370 (1977). In 1977, Dobbs petitioned the superior court for a writ of habeas corpus, but the superior court denied relief. *Dobbs v. Hopper*, No. 77–185 (Tattnall Super.Ct., Oct. 9, 1979). Dobbs then filed an application for probable cause to appeal the superior court ruling, but the Georgia Supreme Court denied the application. The United States Supreme Court denied Dobb's petition for writ of *certiorari*. *Dobbs v. Hopper*, 447 U.S. 930, 100 S.Ct. 3029, 65 L.Ed.2d 1125 (1980).

While his state habeas corpus petition was pending, Dobbs filed an extraordinary motion for new trial, which the superior court denied. *Georgia v. Dobbs*, No. 8403 (Walker Super.Ct., Aug. 13, 1979). The Georgia Supreme Court affirmed this decision, and the United States Supreme Court denied *certiorari*. *Dobbs v. State*, 245 Ga. 208, 264 S.E.2d 18 (Ga.), *cert. denied*, 446 U.S. 913, 100 S.Ct. 1845, 64 L.Ed.2d 267 (1980).

In December, 1980, Dobbs filed a petition for writ of habeas corpus in the District Court for the Northern District of Georgia, pursuant to 28 U.S.C. § 2254. The district court denied relief for alleged constitutional errors in the guilt phase of the trial, but granted relief from the death sentence on the ground that the superior court's instructions regarding the function of mitigating circumstances were constitutionally deficient.[2]

---

1. The Georgia Supreme Court's opinion on direct review details the evidence presented at trial. *See Dobbs v. State*, 236 Ga. 427, 224 S.E.2d 3 (1976), *cert. denied*, 430 U.S. 975, 97 S.Ct. 1667, 52 L.Ed.2d 370 (1977). We discuss those facts necessary to the adjudication of the issues in the course of this opinion.

2. Because the district court granted Dobbs relief from the death sentence, it did not review six additional sentencing phase issues Dobbs raised: (1) whether the sentencing phase jury charge was constitutionally defective because it failed to limit the jury's discretion in imposing the death sentence; (2) whether the admission of Dobbs' prior convictions during the sentencing phase of his trial was constitutional error;

On appeal, this court reversed the district court's grant of relief and remanded the case to the district court for consideration of the sentencing phase claims on which it had reserved decision. *Dobbs v. Kemp*, 790 F.2d 1499 (11th Cir.1986), *modified*, 809 F.2d 750 (1987), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987). The district court denied relief on the reserved issues. *Dobbs v. Zant*, 720 F.Supp. 1566 (N.D.Ga.1989).

On October 11, 1989, during a search of the superior court reporter's storage building, Dobbs's lawyers found stenographic notes of the closing arguments made at Dobbs's sentencing hearing which had previously been missing. In light of the notes' contents, Dobbs filed a motion to expand the record, a motion for leave to amend his petition, and a motion to reopen and reconsider pursuant to Federal Rules of Civil Procedure 59 and 60. On March 6, 1990, the district court denied the motions. Dobbs filed a Notice of Appeal April 4, 1990, and two days later the district court granted a Certificate of Probable Cause to Appeal.

## CONTENTIONS

In this appeal, Dobbs raises seven contentions. First, he contends that a constitutionally unacceptable risk existed that racial prejudice influenced the jury's sentencing decision. Second, he contends that his claim of ineffective assistance of counsel at sentencing should be reconsidered because of the late discovery of the sentencing transcript. Third, Dobbs contends that the district court abused its discretion in denying his motion to reopen and reconsider various issues, including his claim of ineffective assistance of counsel during sentencing. Fourth, he contends that the sentencing instructions were unconstitutional because they limited the jury to a consideration of only the existence of statutory aggravating circumstances. Fifth, Dobbs contends that the jury impermissibly based the imposition of the death sentence on previous unconstitutional convictions. Sixth, he contends that the trial judge's refusal to answer a question from the jury during sentencing deliberations concerning the availability of parole was constitutional error. Finally, Dobbs contends that his death sentence is invalid because the jury did not believe that he would in fact be executed.

The government contends that Dobbs has failed to make the necessary showing that racial prejudice actually influenced the sentencing determination. The government also contends that this court should decline to consider Dobbs's allegation of ineffective assistance of counsel at sentencing because it is based on a transcript not in the record. Similarly, and because we limited our earlier remand to the district court, the government contends that the district court did not abuse its discretion in denying Dobbs's motion to reopen and reconsider various issues. To the extent that the law of the case does not preclude consideration of Dobbs's challenge to the sentencing instructions, the government contends that the charge as a whole properly advised the jury of its role in imposing the death penalty. The government also contends that the use of prior convictions at Dobbs's trial did not violate his constitutional rights, that the trial court properly declined to answer the jury's question regarding the availability of parole, and that Dobbs's allegation that the jurors did not think he would be executed is based on inadmissible evidence.

## ISSUES

The issues are: (1) whether the district court erred in finding no constitutionally significant risk concerning the influence of

(3) whether the trial judge's refusal to answer a question about the availability of parole during the sentencing deliberations was constitutional error; (4) whether the jury's verdict was constitutionally inadequate; (5) whether the fact that the jury allegedly sentenced Dobbs to death thinking that Dobbs would not be executed constituted constitu-

tional error; and (6) whether Dobbs' sentence of death was imposed as a result of passion, prejudice, or other arbitrary considerations. *Dobbs v. Kemp*, 790 F.2d 1499, 1502 n. 1 (11th Cir.1986), *modified*, 809 F.2d 750 (1987), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987).

racial prejudice on Dobbs's sentence; (2) whether this court should consider Dobbs's allegation of ineffective assistance of counsel at sentencing; (3) whether the district court abused its discretion in denying Dobbs's motion to reopen and reconsider various claims; (4) whether the district court erred in finding that the sentencing instructions did not violate Dobbs's constitutional rights; (5) whether the district court erred in determining that the admission of Dobbs's prior convictions during the penalty phase of his trial was constitutional; (6) whether the district court erred in ruling that the trial court properly declined to answer the jury's question regarding the availability of parole; and (7) whether Dobbs has established a constitutional violation through his allegation that the jurors did not think he would be executed.

## DISCUSSION

### I. Risk of Racial Prejudice

■ Dobbs argues that the risk that racial prejudice influenced his sentencing hearing existed to such an extent that the imposition of the death sentence violates his right to be free of cruel and unusual punishment under the eighth amendment to the United States Constitution and violated his right to equal protection under the fourteenth amendment to the United States Constitution. According to Dobbs, his racial prejudice claim arises from the fact that he is black and his victim was white.

The United States Supreme Court has previously dealt with both an eighth amendment and a fourteenth amendment challenge to the imposition of the death sentence based on alleged racial discrimination. *See McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (statistics indicating that racial bias may affect Georgia's capital sentencing system are insufficient to establish that the imposition of the death penalty on a black defendant for the murder of a white victim violates the eighth or fourteenth amendment). Although the petitioner in *McCleskey*

brought a statistical challenge to Georgia's death penalty and Dobbs challenges the constitutionality of his death sentence in particular, the Court's analysis in *McCleskey* is relevant.

In evaluating the eighth amendment claim, the Court stated, "There is, of course, some risk of racial prejudice influencing a jury's decision in a criminal case.... The question 'is at what point that risk becomes constitutionally unacceptable.'" *McCleskey*, 481 U.S. at 308–09, 107 S.Ct. at 1776 (quoting *Turner v. Murray*, 476 U.S. 28, 36 n. 8, 106 S.Ct. 1683, 1688 n. 8, 90 L.Ed.2d 27 (1986)). To support his challenge, Dobbs cites excerpts from the depositions of the eleven trial jurors, of whom only one was black, who were surviving at the time of the remand. Although certain of the jurors' statements revealed racial prejudice, no juror stated that he or she viewed blacks as more prone to violence than whites, or as morally inferior to whites, and their comments do not reveal otherwise.[3]

Dobbs also relies on the trial judge's background and conduct as evidence of racial prejudice affecting the jury's sentencing decision. According to Dobbs, the trial judge not only failed to provide protection from the influence of racial prejudice, but actually contributed to such influence. Dobbs notes that the trial judge was raised in a segregated environment, voted as a state legislator for laws that encouraged segregation, and referred to Dobbs during trial as "colored." Similarly, Dobbs argues that his trial lawyer's racial prejudice potentially influenced the sentencing hearing. Indeed, the district court noted that Dobbs's lawyer "expressed beliefs [in his deposition], often in pointed ways, that blacks in general are inferior to whites morally and intellectually." *Dobbs*, 720 F.Supp. at 1578. Nevertheless, Dobbs's lawyer did not express his personal views at Dobbs's trial, and neither the lawyer nor the trial judge decided Dobbs's penalty. Thus, apart from the trial judge's and de-

---

**3.** The district court's opinion on remand carefully details the jurors' racial views. *See Dobbs,*

720 F.Supp. at 1575–76 and nn. 10–23.

fense lawyer's references to Dobbs as "colored" and "colored boy," it cannot be said that the trial judge's or the defense lawyer's racial attitudes affected the jurors' sentencing determination.

Lastly, Dobbs argues that the facts and venue of his case contributed to the risk that racial prejudice influenced the sentencing decision. Walker County, a small rural community, was at the time of the offense ninety-six percent white, all defendants were black, and the victims were white. Dobbs also introduced in the district court the testimony of a political scientist who stated the opinion that racial prejudice existed in Walker County and that race was a significant factor which affected its citizens' decisions. Such evidence, however, does not necessarily demonstrate that in Dobbs's case, a constitutionally unacceptable risk existed that racial prejudice affected the sentencing decision.

In denying relief on Dobbs's claim, the district court stated,

> After considering all the evidence, the Court concludes that Dobbs has not shown a risk of racial prejudice affecting the sentencing decision to the extent that the death penalty was given unconstitutionally. Although the jurors possess some racial prejudices, and some more so than others, Dobbs has not shown that the jurors, either individually or as a whole, were influenced by prejudices that would make them favor the death penalty for a black person who murdered a white person.

*Dobbs,* 720 F.Supp. at 1579 (footnote omitted). We review the district court's factual findings under a clearly erroneous standard, but subject the district court's legal conclusions to plenary review. *United States v. Alexander,* 835 F.2d 1406, 1408 (11th Cir.1988).

■ Dobbs argues that the district court erred in requiring him to prove that racial considerations in fact affected the jurors' decision to impose the death penalty. Cit-

ing *Turner v. Murray,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), Dobbs asserts that he can satisfy the burden of showing that a constitutionally unacceptable risk existed by showing that racial prejudice might have influenced the sentencing determination.

Dobbs's reliance on *Turner* is misplaced. The *Turner* Court focused on the issue of whether the trial court should have allowed questions during voir dire concerning the potential jurors' racial attitudes. The plurality opinion found that considering the ease with which the risk that the death penalty is imposed arbitrarily could have been minimized, the defendant had the right to ask the questions. In this case, however, at issue is not a prophylactic rule, but the jury's ultimate decision. Dobbs contends that the potential influence of racial prejudice upon the decision makers in his case violated his eighth amendment right. In such an instance, to show that the risk of racial prejudice influencing sentencing rose to a constitutionally unacceptable level, Dobbs must show that racial prejudice actually affected the jury's decision. After reviewing the record, we agree with the district court that Dobbs has failed to demonstrate that a constitutionally unacceptable risk existed that racial prejudice affected his sentencing.

In alleging an equal protection violation, Dobbs has the burden to "prove that the decision makers in *his* case acted with discriminatory purpose." *McCleskey,* 481 U.S. at 292, 107 S.Ct. at 1767 (emphasis in original). As noted above, Dobbs asserts only that based on the backgrounds and general racial attitudes of various participants in the trial, racial prejudice may have influenced his sentencing decision. The jurors denied that race had any effect on their decision, and nothing in the record indicates that the jurors acted with purposeful discrimination. Consequently, Dobbs's eighth and fourteenth amendment claims fail.[4]

4. Our decision on this issue must not be interpreted to mean that we approve of the racial epithets used in this case. Our decision is based on the circumstances of this case and the fact that the racial epithets, under existing law, did not render the trial constitutionally unfair or cruel and unusual.

## II. Ineffective Assistance of Counsel During Sentencing

■ We previously discussed and rejected Dobbs's claim that his trial counsel provided ineffective assistance during the sentencing phase of the trial. *See Dobbs,* 790 F.2d at 1513–14. We are bound by this determination as it is the law of the case. "Under the law of the case doctrine, both the district court and the court of appeals generally are bound by findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case." *United States v. Robinson,* 690 F.2d 869, 872 (11th Cir.1982) (citations omitted). The law of the case, however, does not bar reconsideration of factual findings or legal conclusions if "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to that issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *Barber v. International Brotherhood of Boilermakers,* 841 F.2d 1067, 1072 (11th Cir.1988) (citations omitted).

Dobbs argues that the belated finding in 1989 of the sentencing transcript requires that this court reconsider its previous decision concerning ineffective assistance of counsel at the sentencing phase. According to Dobbs, this transcript establishes that his trial lawyer failed to present any evidence in mitigation or make a closing argument in mitigation; thus, this court should reconsider the previous decision to reject Dobbs's claim because such a decision was based in part on our finding that Dobbs's trial lawyer's "testimony in the district court reveals that he did make a closing argument in mitigation." *Dobbs,* 790 F.2d at 1514 n. 15.

In response, the state notes that Dobbs's entire argument is based on a transcript which has never been made a part of the record by the district court and which this court has declined to allow Dobbs to include in the record on appeal. We agree with the state's conclusion that absent inclusion of the sentencing phase transcript in the record before this court, nothing exists for this court to reconsider. Our previous decision rejecting Dobbs's ineffective assistance of counsel at sentencing claim remains the law of the case.

## III. Motion to Reopen and Reconsider

■ After discovering the sentencing phase transcript, Dobbs filed a motion with the district court to reopen and reconsider his ineffective assistance of counsel claim and other issues. The district court held that

> The issues that Dobbs want reopened ... were decided prior to the Eleventh Circuit's remand. The remand order limited this Court's consideration to issues upon which this Court had reserved judgment. If Dobbs wants to present additional evidence on other issues, he must do so in a separate proceeding.
>
> . . . .
>
> [T]o the extent that the claims Dobbs wants reconsidered are based on the closing arguments at the sentencing phase, they should be heard initially in state court.

As noted above, under the law of the case doctrine, the district court had no basis upon which to reconsider an allegation which had become final or to reopen an issue which was not properly before it. The district court did not abuse its discretion in denying Dobbs's motion to reopen and reconsider. *See United States v. Esle,* 743 F.2d 1465, 1475 (11th Cir.1984) (district court's denial of motion to reopen or reconsider is reviewed for abuse of discretion).

## IV. Sentencing Phase Instructions

■ Dobbs argues that the jury instructions concerning mitigation were unconstitutional because they established an incorrect standard for determining whether the death penalty should be imposed. According to Dobbs, the instructions unconstitutionally informed the jury that the only standard they would be permitted to consider would be the existence of statutory aggravating circumstances. Dobbs objects specifically to the following language:

> Now I instruct you our law says in arriving at your verdict in these cases, beyond prescribing the limits which a jury can

go, the law provides no standards for the guidance of the jury in the selection of the penalty but rather commits the whole matter of determining which penalty shall be fixed to the judgment, conscience and absolute discretion of the jury.

The only standard, if any, that you will be permitted to consider in arriving at whether or not you will inflict the death penalty is the question of whether or not you find beyond a reasonable doubt that this defendant committed the offense of murder while engaged in the commission of another capital felony.

In our previous decision, we held that "[c]onsidering the entire charge in context, we are confident that no reasonable juror could have misunderstood the nature and function of mitigating circumstances and its role in evaluating mitigating evidence in argument. Thus, ... the trial court's jury instructions were not constitutionally deficient." *Dobbs*, 790 F.2d at 1513. Dobbs maintains that his argument is not foreclosed by the law of the case because this circuit's previous decision concerned only the definition of the nature and function of mitigating circumstances. According to Dobbs, the panel did not address, nor implicitly foreclose, specific issues of discretion and standards to guide the jury.

■ Assuming that Dobbs's current challenge is not foreclosed by the law of the case, we find that the charge as a whole properly informed the jury of its role in imposing the death penalty. In evaluating the propriety of the trial court's sentencing instructions, the entire charge must be examined in context. *Peek v. Kemp*, 784 F.2d 1479, 1494 (11th Cir.) (en

banc), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). When the whole charge is considered, it is clear that it sufficiently informed the jury on the requirement of finding statutory aggravating circumstances and the requirement for considering mitigating circumstances.[5] The particular instructions to which Dobbs objects, when read in context, simply inform the jury that once it finds an aggravating factor, it has wide discretion to determine the punishment.

## V. Admission of Prior Convictions

■ During the sentencing phase of Dobbs's trial, the state offered evidence of three criminal offenses of which Dobbs had previously been convicted. According to Dobbs, each prior conviction is constitutionally invalid, and his death sentence must be vacated because it is based in part on these invalid convictions. *See Johnson v. Mississippi*, 486 U.S. 578, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988) (defendant's death sentence was unconstitutionally imposed because one of the aggravating circumstances supporting the sentence was based on a prior conviction which was held invalid subsequent to the imposition of the death sentence). Specifically, Dobbs asserts that he entered a plea of guilty to shoplifting without the assistance of counsel and the court sentenced him to seven months imprisonment. Likewise, he asserts that he entered a plea of guilty to possession of forged checks without the assistance of counsel and the court sentenced him to two years in prison, and that he entered a plea of guilty to escape and the indictment erroneously reflected that he escaped while

---

5. At the beginning of the charge on punishment for murder, the trial court instructed the jury,

Before you would be authorized to fix a sentence which would require the Court to sentence him to death by electrocution, you would have to find beyond a reasonable doubt that one of the aggravating circumstances which the Legislature had provided for in capital felonies where the death sentence can be imposed and where the death sentence is asked for, have provided [sic] ten different statutory aggravating circumstances....
You would have the authority to return a verdict of death by electrocution if you found

beyond a reasonable doubt that in this case the offense of murder was committed while this defendant was engaged in the commission of another capital felony....

....

[N]ow it will also be necessary if your verdict on Count V is death by electrocution, you must in writing write out the statutory ground which you find him to be guilty of in arriving at the verdict of death by electrocution, you will have that with you in writing, that statutory ground which the Court has authorized you to consider if you see fit to do so.

serving time for the felony of forgery. Dobbs also argues that his pleas were involuntary and that the state introduced the convictions at his sentencing hearing without providing notice as required by Georgia law. *See Gates v. State,* 229 Ga. 796, 194 S.E.2d 412, 414 (1972).

■ In denying relief, the district court held that

> in its charge to the jury, the trial court unambiguously stated that the evidence of prior convictions could not be considered during the death penalty deliberations. Further, as the Eleventh Circuit has found, the trial court charged the jury that the only aggravating factor argued by the State was that the murder was committed while Dobbs was engaged in the commission of another capital felony.
>
> . . . .
>
> The Court concludes that the trial court's instruction to the jury not to consider the prior convictions shows that the convictions did not affect the sentencing decision.

*Dobbs,* 720 F.Supp. at 1568–69 (citations omitted). Dobbs incorrectly argues that because the state did not forward such a rationale, the district court improperly relied on it. The district court is not precluded from basing a legal conclusion on an argument which neither party has specifically raised. After reviewing the record, we agree with the district court's curative instruction analysis.

## VI. The Jury's Consideration of the Availability of Parole

■ During sentencing deliberations, the jury foreman asked the trial judge, "We the jury would like to know on the—say a felony from 1 to 10 years, we would sentence them to 10 years, would he be eligible for parole within that 10 years?" The trial court refused to answer the question. According to Dobbs, the jury therefore considered the possibility of parole in its decision to sentence him to death. He argues that the trial court's failure to answer the

jury's question contravenes "the policy of the law [of Georgia] that the jury should not be influenced in a criminal case in the rendition of their verdict by a consideration of the fact that the penalty imposed by them might be commuted by the State Board of Pardons and Paroles." *McGruder v. State,* 213 Ga. 259, 98 S.E.2d 564, 569 (1957).

"[D]efendants in the sentencing phase of a capital murder trial have no federal right to prevent jury consideration of the possibility that they will be paroled if sentenced to life imprisonment. Consequently, the trial court's failure to instruct [the defendant's] jury to disregard that possibility could not have violated the Constitution." *Tucker v. Zant,* 724 F.2d 882, 892 (11th Cir.1984), *vacated on other grounds,* 474 U.S. 1001, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985). Accordingly, the trial court did not commit constitutional error in refusing to answer the jury's question regarding parole.

## VII. The Jury's Belief Concerning the Execution of the Death Penalty

■ At the time of Dobbs's trial, the United States Supreme Court had held Georgia's application of its death penalty statute unconstitutional. *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Only two years subsequent to Dobbs's trial did the Court again permit the imposition of the death penalty under revised Georgia statutes. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Dobbs argues that the jurors at his trial therefore thought that Dobbs would not in fact be executed, and that the jury unconstitutionally imposed the death penalty due to an arbitrary factor. Dobbs attempts to support his contention by citing to the jurors' deposition testimonies. The district court correctly rejected Dobbs's claim because the jurors' testimonies concerning their deliberations are inadmissible pursuant to the Federal Rules of Evidence 606(b).[6]

---

**6.** Rule 606(b) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to

## CONCLUSION

For the reasons stated, we affirm the district court's denial of Dobbs's petition for a writ of habeas corpus.[7]

AFFIRMED.

any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improp-erly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes. (West 1991).

7. The Petition for Rehearing and Suggestion of Rehearing En Banc filed November 22, 1991 is denied.