Salvatore CANNAVO, Sr., Petitioner,

v.

UNITED STATES of America, Respondent.

Nos. 94 Civ. 0633 (JES), 90 Cr. 0113 (JES).

United States District Court, S.D. New York.

Aug. 6, 1994.

Salvatore Cannavo, Sr., petitioner, pro se.

Douglas B. Chester, Spring Mills, PA, for petitioner.

Mary Jo White, U.S. Atty. for S.D.N.Y., New York City, for respondent; Robin W. Morey, Asst. U.S. Atty., of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 28 U.S.C. § 2255, Salvatore Cannavo, Sr., brings this petition to vacate his sentence on the grounds that government intimidation of a prospective witness violated his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process. For the reasons that follow, the petition is denied.

## BACKGROUND

The following facts have been adduced from surveillance reports, tape recorded conversations and testimony introduced at trial.

By the summer of 1983, Ben DiMarco, a heroin addict and heroin dealer, had incurred a drug-related debt to his supplier, Salvatore Cannavo. Transcript of Trial ("Tr.Trl.") 195–200. Following a meeting with Cannavo, Ben DiMarco and his father, Vincent DiMarco, agreed to procure a quantity of marijuana for Cannavo in Florida. Tr.Trl. 200–201. However, Ben DiMarco returned from Florida without the marijuana and without Cannavo's $20,000 in purchase money, thereby increasing the debt. Tr.Trl. 203. In order to pay off the increased debt, Ben and Vincent DiMarco agreed to sell a quantity of heroin for Cannavo. Tr.Trl. 204. However, Ben DiMarco apparently appropriated a significant portion of the heroin for personal use, thereby increasing the debt by another $60,000. Tr.Trl. 206–208.[1]

In 1984, a government informant introduced Vincent DiMarco to an undercover DEA agent. Tr.Trl. 82. On March 5, 1985, Vincent DiMarco arranged for a sale of heroin to the DEA agent at the Sheraton La-Guardia Hotel. Tr.Trl. 88–97. After the

---

1. During conversations recorded by the Drug Enforcement Administration ("DEA"), Vincent DiMarco stated that Ben DiMarco's outstanding debt to Cannavo created his involvement in "this mess." Tr.Trl. 246–47.

sale was completed, Vincent DiMarco and Cannavo's son, Willy Cannavo, transferred the sale proceeds to Salvatore Cannavo. Tr.Trl. 218. On March 20, 1985, Vincent DiMarco arranged for a second sale of heroin to the DEA agent at the Sheraton LaGuardia Hotel. Tr.Trl. 115. After the second sale was completed, Vincent DiMarco and Willy Cannavo again transferred the sale proceeds to Salvatore Cannavo. Tr.Trl. 226. On May 11, 1985, Willy and Salvatore Cannavo were arrested on unrelated heroin charges. Tr.Trl. 178–79. On June 20, 1985, Vincent DiMarco informed the DEA agent that, because Willy Cannavo and his father had been arrested, it would be difficult to procure additional heroin. Tr.Trl. 175–77.

On September 9, 1986, after being arrested on drug charges, Vincent DiMarco began to operate as a government informant. Tr.Trl. 125. During September through October 1986, in response to pressure exerted by Cannavo, Vincent DiMarco made four small payments on the outstanding debt, and also agreed to procure additional marijuana. Tr.Trl. 237–39, 252–56. During January through March 1987, Vincent DiMarco provided Cannavo with three samples of marijuana for a prospective purchase. On January 20, 1987, Vincent DiMarco provided Cannavo with the first sample of marijuana. Tr.Trl. 256–58. Then, on February 6, 1987, Vincent DiMarco delivered the second sample of marijuana to Paolo Rizzuto, an associate of Cannavo. Tr.Trl. 260–64. A few days later, Vincent DiMarco obtained a $750 payment for the second sample at the site of the Cannavo construction business. Tr.Trl. 266–67. On March 10, 1987, Rizzuto picked up the third sample of marijuana, and made a partial payment of $5,000 the next day. Tr.Trl. 273, 275–77. Over the next five days, Rizzuto made additional payments totalling $8,000, and Cannavo made the final payment of $3,350. Tr.Trl. 277–78, 280.

Thereafter, Cannavo was arrested and charged with the two sales of heroin to the DEA agent in March 1985 and for conspiring to purchase marijuana in 1986–87. During the ensuing trial, Cannavo's counsel re-peatedly attacked Vincent DiMarco's credibility based upon his attempted suicide, subsequent psychiatric treatment for depression in 1981 and his inability to testify initially due to a prolonged period of mental incapacity.[2] Tr.Trl. 286–92. On September 18, 1990, following a five-day jury trial, Salvatore Cannavo was convicted on two counts of possession of heroin with intent to distribute, pursuant to 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B) and 18 U.S.C. § 2, and one count of conspiracy to purchase marijuana, pursuant to 21 U.S.C. § 846. On February 4, 1991, the Court sentenced Cannavo to seven years imprisonment, four years special parole and a $50 assessment on each count of conviction. Cannavo did not file a direct appeal.

On April 1, 1991, Cannavo filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("Rule 33"). In support of the Rule 33 motion, Cannavo claimed that new evidence—an affidavit by Ben DiMarco—demonstrated that he did not participate in narcotics transactions with Ben DiMarco, and that Vincent DiMarco's testimony was unreliable. *See* Affidavit of Ben DiMarco Sworn to March 29, 1991 ("Ben DiMarco Aff.") ¶ 6–10. In his affidavit, Ben DiMarco explained that, after his father had become incompetent to testify, he changed his residence and telephone number without informing Cannavo's counsel. *Id.* ¶ 4, 6. According to DiMarco, he was unaware of Cannavo's trial and conviction until six months later, when an individual requested that he contact Cannavo's counsel. *Id.* ¶ 5. The Court denied the Rule 33 motion because Cannavo had long been aware of the substance of Ben DiMarco's potential testimony, and failed to request a continuance. Transcript of Oral Argument ("Tr. Arg.") 17–18.

However, in the interests of justice, the Court then treated the Rule 33 motion as a petition pursuant to 28 U.S.C. § 2255. Tr. Arg. 17–18. As noted above, the affidavit alleged that Cannavo did not participate in narcotics transactions with *Ben* DiMarco. Ben DiMarco Aff. ¶ 6–10. As conceded at oral argument, however, the affidavit failed

---

**2.** According to Vincent DiMarco, his period of mental incapacity was triggered by his participation in a witness relocation program, and by the resulting separation from his family. Tr.Trl. 291.

to establish that Cannavo did not participate in narcotics transactions with *Vincent* DiMarco. Tr.Arg. 10. Thus, the testimony did not negate Cannavo's participation in drug dealings with Vincent DiMarco and, at best, constituted further evidence impeaching the credibility of Vincent DiMarco whose testimony had already been substantially impeached, as noted above. Accordingly, the Court concluded that Cannavo had failed to demonstrate the likelihood of a different outcome at trial.[3] Tr.Arg. 19–20.

On November 30, 1993, Cannavo filed the instant petition pursuant to 28 U.S.C. § 2255.[4] In support of this petition, Cannavo has submitted the previous affidavit of Ben DiMarco and an affidavit by his sister, Nancy DiMarco.[5] In her affidavit, Nancy DiMarco alleges that a DEA agent contacted her in June 1989, and stated that Vincent DiMarco's government cooperation had protected Ben DiMarco from prosecution. Affidavit of Nancy DiMarco Sworn to June 7, 1991 ("Nancy DiMarco Aff.") ¶ 5–6. According to Nancy DiMarco, the unidentified agent warned that if Ben DiMarco became involved in the Cannavo case, the Internal Revenue Service would investigate his financial records. *Id.* ¶ 6. Nancy DiMarco claims to have conveyed this information to Ben DiMarco and the rest of her family. *Id.* ¶ 6–8. As a result of the alleged government intimidation, Nancy DiMarco claims that "[no] one would give anyone information about Ben." *Id.* ¶ 10.[6]

**DISCUSSION**

Where a defendant, such as Cannavo, seeks collateral review pursuant to section 2255, well-established procedural requirements are implicated. For instance, "section 2255 may not be employed to relitigate questions which were raised and considered on direct appeal," *Barton v. United States*, 791 F.2d 265, 267 (2d Cir.1986) (per curiam), or claims considered in a previous § 2255 petition. *See Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir.1992). Moreover, the "failure to raise a claim on direct appeal is itself a default of normal appellate procedure, which a defendant can overcome only by showing cause and prejudice." *Campino v. United States*, 968 F.2d 187, 190 (2d Cir.1992). Accordingly, because Cannavo failed to raise the instant claim at or before trial, or on direct appeal, he must demonstrate cause for the procedural default, and actual prejudice resulting therefrom. *See United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d 816 (1982); *see also United States v. Light*, 394 F.2d 908, 913 (2nd Cir.1968) (holding that failure to seek continuance constitutes procedural default).[7]

Under the cause and prejudice test, cause "must be something external to the petitioner, something that cannot be fairly attributed to him." *Coleman*, 501 U.S. at 753, 111 S.Ct. at 2566. Although government misconduct may constitute cause under cer-

---

3. On February 25, 1992, Cannavo filed a motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure ("Rule 35") seeking a reduction of his sentence. In the Rule 35 motion, Cannavo argued that the affidavit of Ben DiMarco casts doubt upon the credibility of Vincent DiMarco. On May 19, 1992, the Court denied that motion as well.

4. Although Cannavo filed the instant petition *pro se*, he has since retained counsel.

5. The affidavit, dated July 7, 1991, was submitted at oral argument on the Rule 33 motion. At that time, however, the Court refused to consider the affidavit because its untimely submission failed to afford the government an adequate opportunity to respond. Tr.Arg. 15–16, 20.

6. By order dated February 18, 1994, the Court directed the government to file a response to Cannavo's latest application on or before March 18, 1994. However, on March 18, 1994, the

Court granted the government an extension of time to respond to Cannavo's petition. In view of that circumstance, Cannavo's claim that the petition should be granted because the government defaulted is frivolous. First, there was no default because the Court extended the government time to respond. Moreover, the Court itself had fixed that time and had full discretion to extend those limits, especially where, as here, it was done on an application made before the period had expired. In any event, defaults are not favored, especially in criminal cases, such as this one, where it is clear there is no merit to Cannavo's petition.

7. There are two exceptions to the cause and prejudice test. First, where a claim of ineffective assistance of counsel is made and a defendant did not retain new counsel on direct appeal or the record was not fully developed on the ineffective assistance issue, the failure to raise a claim of ineffective assistance of counsel on direct appeal is not a procedural default. *See Billy–Eko v. United States*, 8 F.3d 111, 115 (2d Cir.1993).

tain circumstances, *see, e.g., Dobbs v. Zant,* —— U.S. ——, ——, 113 S.Ct. 835, 836, 122 L.Ed.2d 103 (1993) (per curiam); *Amadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 1776–77, 100 L.Ed.2d 249 (1988), Cannavo has failed to address, much less demonstrate, any relationship between the alleged government interference and his failure to seek a continuance at trial. During oral argument on the earlier Rule 33 motion, Cannavo's counsel conceded that, prior to trial, he believed "that Benjamin DiMarco had absented himself and that the government had somehow conveyed to him that it wasn't in his best interest to cooperate with the defense here." Tr.Arg. 6–7. The Court then noted that "[a]ny issues with respect to the availability or nonavailability of Benny DiMarco could have been raised well before trial or even at trial. . . . The testimony was known, and if there was a need to get this witness available for the trial, either the assistance of the Court or government could have been requested timely and he may have been available as a witness." *Id.* 18–19.

Accordingly, because Cannavo was aware of the particular evidence and the suspected government misconduct in relation thereto, he cannot demonstrate cause for his procedural default. *See, e.g., McCleskey v. Zant,* 499 U.S. 467, 501–02, 111 S.Ct. 1454, 1474–75, 113 L.Ed.2d 517 (1991).

 In any event, even assuming Cannavo could demonstrate that the alleged government misconduct caused the procedural default, he clearly suffered no prejudice resulting therefrom. If viewed as government intimidation of a potential defense witness, Cannavo's allegations are subject to a harmless error analysis. *See United States v. Pinto,* 850 F.2d 927, 933 (2d Cir.1988). For purposes of collateral review, "an error of constitutional magnitude is to be considered harmless unless it had a ' "substantial and injurious effect or influence in determining the jury's verdict." ' " *Henry v. Speckard,* 22 F.3d 1209, 1215 (2d Cir.1994) (quoting *Brecht*

*v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946))). Moreover, even if viewed as government suppression of evidence, as the parties suggest, Cannavo must demonstrate a reasonable probability that the outcome of the trial would have been different. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985).

As noted above, the two DiMarco affidavits allege that Cannavo did not participate in narcotics transactions with *Ben* DiMarco, but in no way establish that Cannavo did not participate in narcotics transactions with *Vincent* DiMarco. Ben DiMarco Aff. ¶ 6–10; Tr.Arg. 10. Moreover, in light of the extensive impeachment material employed by Cannavo at trial, the Court concludes, as it did in connection with his first petition, that any further impeachment testimony would have been cumulative. Tr.Arg. 19–20. *See United States v. Sposato,* 446 F.2d 779, 781 (2d Cir.1971) (new evidence "which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify a new trial") (collecting cases). In short, the testimony of Vincent DiMarco, the corroborating testimony of DEA agents and Cannavo's own admissions recorded by the DEA overwhelmingly established Cannavo's involvement in the procurement and distribution of marijuana and heroin respectively. Accordingly, Cannavo has suffered no prejudice and the petition must be dismissed.

## CONCLUSION

For the reasons set forth above, the Clerk of the Court is directed to dismiss the petition and close the above-captioned action.

It is **SO ORDERED.**

---

Secondly, even if a petitioner cannot demonstrate cause, there is no procedural bar where the "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546,

2565, 115 L.Ed.2d 640 (1991); *see also United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (citation omitted). As indicated by the discussion below, neither exception is applicable in this case.