The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Jason A. HOLT, Defendant–Appellee.

No. 10CA1907.

Colorado Court of Appeals,
Div. II.

Oct. 13, 2011.

Carol Chambers, District Attorney, David C. Jones, Senior Deputy District Attorney, Centennial, Colorado, for Plaintiff–Appellant.

Eric B. Fenster, LLC, Eric B. Fenster, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge MILLER.

The People appeal the trial court's order vacating a jury's guilty verdict and ordering a new trial. We reverse and remand. In doing so, we conclude that a juror's statement during deliberations regarding the severity of a charged offense does not constitute extraneous information within the meaning of Colorado Rule of Evidence 606(b), if the statement is based on the juror's general knowledge or personal experience.

## I. Background

A jury found defendant, Jason A. Holt, guilty of vehicular eluding. Following trial, he moved to vacate the verdict and requested a new trial, alleging that extraneous prejudicial information had been brought to the jurors' attention. To support his allegation, defendant offered affidavits of three jurors stating that (1) a juror claimed that, based on his personal experience, vehicular eluding was a minor traffic violation, and (2) several jurors had looked at or heard a dictionary definition of "elude" during deliberations.

Following a hearing, the trial court determined that the statement regarding the lack of severity of the offense and the jury's exposure to a dictionary definition both constituted extraneous prejudicial information. Consequently, it vacated the verdict and ordered a new trial.

The People appeal pursuant to section 16–12–102(1), C.R.S.2011, and Crim. P. 33(d), contending that (1) the juror's statement regarding the severity of the offense is not extraneous information and therefore could not be used to impeach the jury's verdict, and (2) the jurors' use of a dictionary definition was not prejudicial. We agree with both contentions.

## II.   Analysis

■  "The decision of a trial court to grant or deny a new trial is a matter entrusted to the court's discretion and will not be disturbed on review absent an abuse of that discretion." *People v. Wadle*, 97 P.3d 932, 936 (Colo.2004). But a district court necessarily abuses its discretion if it grants a new trial based "on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)).

■  In this case, the trial court vacated the jury's verdict and ordered a new trial based on juror affidavits. CRE 606(b) "strongly disfavors" the use of juror testimony to impeach a verdict, and our law seeks to "promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion." *People v. Harlan*, 109 P.3d 616, 624 (Colo.2005).

■  A juror may testify, however, about "whether extraneous prejudicial information was improperly brought to the jurors' attention." CRE 606(b). For a court to set aside a verdict because jurors were exposed to extraneous prejudicial material, the moving party must show "both that extraneous information was improperly before the jury and that the extraneous information posed the reasonable possibility of prejudice to the defendant." *Kendrick v. Pippin*, 252 P.3d

1052, 1063 (Colo.2011). The determination whether extraneous prejudicial information was presented to the jury is a mixed question of law and fact. *Id.* at 1064.

## A.   Statement Regarding the Severity of Vehicular Eluding

The People contend that the juror's statement regarding the severity of vehicular eluding was not extraneous information. We agree.

■  When a party offers affidavits to impeach a verdict, the trial court must examine the information in the affidavits and determine if the testimony is admissible under CRE 606(b). *See id.* at 1063–64. The trial court may consider testimony that the jury was exposed to information not properly received into evidence or not included in the court's instructions because such information is extraneous to the case and improper for juror consideration. *See Harlan*, 109 P.3d at 624. But CRE 606(b) prohibits consideration of testimony regarding the jury's deliberations, a juror's mental processes leading to his or her decision, or whether the extraneous information swung the vote of any juror. *Id.* at 625.

■  Here, the trial court found that a juror claimed to have had some pre-existing personal experience with vehicular eluding and that he told the other jurors that the penalty for the offense was a "slap on the wrist." [1] Neither party cited, and we have not found, any reported Colorado opinion deciding whether a juror's statement regarding the severity of a charged offense constitutes extraneous information under CRE 606(b). However, jurors may apply their general knowledge and everyday life experience in deliberations. *Kendrick*, 252 P.3d at 1064. Therefore, testimony that jurors held

---

1.  Neither party offered any testimony or other evidence at the hearing on defendant's motion to vacate the verdict. Defendant's three affidavits are not entirely consistent. All three stated that the juror told the others that he had been convicted of DUI. One of them stated that he claimed he had been convicted of eluding, and another stated that he claimed he was charged with the offense. Two of the affidavits used the term "minor traffic infraction," while in a third

the juror was reported as describing eluding as "a very minor violation." No affidavit referred to the penalty as a "slap on the wrist," though the term was used by defense counsel in the motion and in oral argument. We conclude that these discrepancies are immaterial to our analysis, which applies to all of the versions of the juror's statements regarding the severity of, or the penalty for, vehicular eluding.

discussions based on a juror's general knowledge or personal experiences cannot be offered to impeach a verdict under CRE 606(b). *See id.* We conclude that this general rule also applies to the general knowledge of, and previous personal experiences with, the criminal justice system of a lay juror, as opposed to an attorney or other person with professional or educational expertise in that field.

Other jurisdictions have similarly concluded that juror statements about possible consequences of a jury's verdict cannot be offered as evidence under their versions of CRE 606(b). *See, e.g., Dobbs v. Zant,* 963 F.2d 1403, 1411 (11th Cir.1991) (testimony concerning a jury's mistaken belief that the defendant would not be executed if sentenced to death held not admissible under Federal Rule of Evidence 606(b)), *rev'd on other grounds,* 506 U.S. 357, 113 S.Ct. 835, 122 L.Ed.2d 103 (1993); *Silagy v. Peters,* 905 F.2d 986, 1008 (7th Cir.1990) (refusing to consider evidence of a juror's erroneous statements that the defendant would serve only seven years if convicted and would not be executed if sentenced to death); *Lewis v. State,* 249 Ga.App. 812, 549 S.E.2d 732, 736 (2001) (refusing, under a rule similar to CRE 606(b), to consider jurors' testimony that they believed defendant would receive probation if convicted), *disapproved of on other grounds by Miller v. State,* 285 Ga. 285, 676 S.E.2d 173 (2009); *State v. Robinson,* 336 N.C. 78, 443 S.E.2d 306, 330 (1994) (refusing to consider information based on juror's previous experiences regarding possibility defendant would receive parole); *State v. Galbreath,* 359 S.C. 398, 597 S.E.2d 845, 849 (2004) (information regarding the possible sentence the defendant would receive held not extraneous because a juror had acquired the knowledge through her own personal experience); *see also Fullwood v. Lee,* 290 F.3d 663, 684 (4th Cir.2002) (in a habeas corpus proceeding, a juror's statement regarding the availability of parole for the defendant was not extraneous information for purposes of the Sixth Amendment).

Here, the juror's statement was based upon his own personal knowledge, obtained before the trial began. Therefore, we conclude that the juror's statement was not extraneous information, but instead was part of the jury's internal discussions and cannot be offered as evidence to impeach the verdict under CRE 606(b). *See Kendrick,* 252 P.3d at 1064.

We recognize that the supreme court's recent decision in *Kendrick,* announced after the submission of opening and answer briefs in this case, concluded that *"legal content and specific factual information learned from outside the record and relevant to the issues in a case constitute extraneous prejudicial information improperly before a jury." Id.* (emphasis added). For four reasons, however, we conclude our resolution of this matter is not inconsistent with *Kendrick.*

First, the severity of the vehicular eluding charge was not relevant to the issues in this case. The juror did not disclose any legal content relating to the elements of the offense or any other issue for the jury. The trial court instructed the jury that the severity of the charge was irrelevant: "You should not try to guess what the punishment might be. It should not enter into your consideration at any time."

Second, *Kendrick* dealt with jurors who bring specialized professional and educational expertise into the jury room. It did not involve any type of legal information. The court held that a juror's use of her background in engineering and mathematics to calculate the defendant's speed, distance, and reaction time in an accident and the sharing of those calculations with the rest of the jury did not constitute extraneous information within the meaning of CRE 606(b). *Id.* at 1066. In reaching that conclusion, the court repeatedly emphasized that jurors may properly rely on their professional and educational expertise to inform their deliberations so long as they do not "bring in" or "introduce" legal content learned from outside the record. *See, e.g., id.* at 1056, 1063, 1065–66. The emphasis on the exception for legal content precludes any suggestion that lawyers and other individuals trained in certain aspects of the law may use knowledge acquired through their training and experience in deciding what law applies to resolve a matter before them and share that knowledge with

other members of the jury. Here, however, the juror shared no knowledge concerning any of the elements of the offense, and the "legal content" he shared was not based on specialized professional or educational expertise or experience.

Third, the *Kendrick* court's emphasis on the legal content exception relied upon its prior decision in *Harlan*, 109 P.3d at 625. *Kendrick*, 252 P.3d at 1064. The court in *Harlan* distinguished between bringing a Bible and related materials into the jury room and merely discussing the jurors' religious views as they might bear on their decision:

> We do not hold that an individual juror may not rely on and discuss with the other jurors during deliberation his or her religious upbringing, education, and beliefs in making the extremely difficult "reasoned judgment" and "moral decision" he or she is called upon to make in the fourth step of the penalty phase under Colorado law. We hold only that it was improper for a juror *to bring the Bible into the jury room* to share with other jurors the written Leviticus and Romans texts during deliberations; the texts had not been admitted into evidence or allowed pursuant to the trial court's instructions.

109 P.3d at 632 (emphasis added). Here, according to the record before us, the juror did not "bring" or "introduce" into the jury room any written materials, such as a volume of the Colorado Revised Statutes or an article purporting to describe or characterize the penalty for vehicular eluding. Nor did he conduct any research on that subject and share the results of that research with the other jurors. Instead, he merely applied his "general knowledge and everyday experience" in deciding the case, which he may properly do under *Kendrick*, 252 P.3d at 1064.

Fourth, we agree with the Fourth Circuit's observation that "virtually every juror will have preconceived notions about the legal process which the defendant can uncover and examine during jury selection." *Fullwood*, 290 F.3d at 684; *see also* 27 Charles A. Wright et al., *Federal Practice and Procedure: Evidence* § 6075, at 531 (2d ed. 2007) ("Obviously, no juror can approach deliberations with an entirely clean cognitive slate. Humans make decisions by drawing upon their accumulated background knowledge and experience."). This is particularly true in a world where crime and courtroom dramas appear on television almost continuously, giving the public prolific information—whether or not accurate or applicable to a criminal case in Colorado—on innumerable legal topics. As a practical matter, it is impossible to select a jury free of preconceived notions about the legal system or to prevent discussion of such information in the jury room. Neither *Kendrick* nor prior supreme court decisions evidence an intent to categorize such discussions as extraneous information under CRE 606(b)(1). Classifying them as extraneous could expose jurors to greater post-trial scrutiny and questioning from defendants and civil litigants, undermining the purpose of CRE 606, which is to "promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion." *Harlan*, 109 P.3d at 624.

We accordingly do not interpret *Kendrick* as permitting a trial court to consider evidence that a juror discussed during deliberations his understanding of the severity of a charge based solely on his or her personal experience unrelated to any professional or educational expertise, where this information was "gained before [he] was selected to participate in the case and not as the result of independent investigation into a matter relevant to the case." *Kendrick*, 252 P.3d at 1066. Therefore, because the juror's statement in this case did not constitute extraneous information, the trial court erred by considering it and ordering a new trial.

### B. Juror Use of a Dictionary to Define "Elude"

The People concede that a dictionary definition is extraneous information, but contend that defendant was not prejudiced by several jurors' researching and discussing the dictionary definition of "elude." We agree.

A defendant is prejudiced if there is a reasonable possibility that the extraneous information would affect the verdict

of a typical jury to the defendant's detriment. *Harlan*, 109 P.3d at 625. "[T]he term 'reasonable possibility' describes a degree of likelihood and implies a realistic possibility that the communication would influence the verdict of a typical juror." *Wadle*, 97 P.3d at 937. We review de novo a trial court's determination that extraneous information prejudiced the defendant. *See id.* at 938; *People v. Whitman*, 205 P.3d 371, 386 (Colo.App. 2007).

Here, the trial court found that a member of the jury brought a dictionary definition of "elude" or "eluding" into the jury room and shared it with several jurors. A juror's looking up of a dictionary definition of a crime of which the defendant has been charged is improper and affidavits concerning that fact are admissible under CRE 606(b). *Wiser v. People*, 732 P.2d 1139, 1141 (Colo.1987). The affidavits do not, however, disclose what definition the jurors considered, or whether the definition was inconsistent with the language of the vehicular eluding statute.[2] Defendant bears the burden of proving that the extraneous information posed a reasonable possibility of prejudice to him. *See Kendrick*, 252 P.3d at 1064. By failing to provide the content of the definition, defendant failed to meet his burden of proving prejudice. The trial court, therefore, erred by concluding that the definition presented to the jury was prejudicial and ordering a new trial based on that conclusion.

## III. Conclusion

We conclude that the trial court's order granting a new trial was an abuse of discretion because it was based upon two erroneous conclusions of law. First, the juror's statement regarding the severity of the offense was not extraneous prejudicial information and could not be used to impeach the jury's verdict. Second, insufficient evidence supports the trial court's conclusion that there is a reasonable possibility that the jurors' use of the dictionary definition prejudiced defendant.

Therefore, the order is reversed, and the case is remanded to the trial court to reinstate the jury verdict and resolve any remaining issues raised in post-trial motions.

CASEBOLT and CRISWELL *, JJ., concur.

---

2. At the hearing on the motion for a new trial, the prosecution presented two dictionary definitions of "elude" to the trial court, which indicate that eluding involves "skill" or "trickery." If the jury had viewed those definitions, it may have added those concepts as additional elements to be proven, increasing the prosecution's burden. *See Wiser*, 732 P.2d at 1143 (holding that the defendant was not prejudiced by the jury's exposure to the dictionary definition of "burglary" because the definition referenced theft, which was not an element the prosecution was required to prove).

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2011.